UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DELPHI AUTOMOTIVE SYSTEMS, LLC,
a Delaware corporation,

      Plaintiff,

v.

SEGWAY INC., a Delaware corporation,

      Defendant.
_____/

Case No. 07-12743

Honorable Patrick J. Duggan

## **OPINION AND ORDER GRANTING PLAINTIFF'S MOTION TO REMAND**

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on October 16, 2007.

PRESENT:     THE HONORABLE PATRICK J. DUGGAN
                      U.S. DISTRICT COURT JUDGE

On May 25, 2007, Delphi Automotive Systems, LLC ("Plaintiff" or "Delphi") filed a six-count Complaint in the Oakland County Circuit Court against Segway Inc. ("Defendant" or "Segway").¹ On June 29, 2007, Defendant removed the action to this Court pursuant to 28 U.S.C. §§ 1332 and 1441, contending that there is diversity jurisdiction or, in the alternative, that "jurisdiction is proper because the instant case is

---

¹Plaintiff's Complaint alleges the following six counts: (I) Breach of Contract; (II) Breach of Implied Contract; (III) Unjust Enrichment; (IV) Promissory Estoppel; (V) Quantum Meruit; and (VI) Innocent Misrepresentation. Plaintiff has pleaded Counts II – VI in the alternative.

related to Delphi's bankruptcy case." (Notice of Removal ¶ 12.) Presently before this Court is Plaintiff's Motion to Remand, filed on July 30, 2007. Plaintiff's motion has been fully briefed. The Court held a hearing on Plaintiff's motion on October 11, 2007.

I.  **Factual Background**

Delphi manufactures, among other products, lithium battery technology. "Segway develops products for the personal transportation market, including its most well-known product, the Segway Personal Transporter." (Compl. ¶ 7.)

"As of 2000, Delphi and Segway's predecessor corporation, DEKA Research & Development Corp. ('DEKA'), had a production program agreement in which Delphi was to develop battery technology and prototype batteries for DEKA's Independent IBOT Mobility System, a self-balancing mobility device designed to replace the wheelchair, which enables users to climb stairs and negotiate sand, rocks, and curbs." (Compl. ¶ 9.) During the development program for the IBOT battery technology, Dean Kamen, "DEKA's President and founder," "introduced Delphi officials to the Personal Transporter concept, informing them that he intended to go into production with it, and that he wanted Delphi to develop a lithium ion battery for its power source." (*Id.* ¶ 10.)

According to Plaintiff's Complaint, Kamen offered to enter into an agreement with Delphi for the engineering development of a lithium ion battery system for the Personal Transporter. (*Id.* ¶ 11.) Plaintiff alleges that Delphi accepted Kamen's offer. (*Id.*)

In the present dispute, Plaintiff seeks monetary damages for Defendant's alleged breach of the battery development contract.

II.  **Applicable Law and Analysis**

### A. Removal Generally

Generally, a civil action brought in state court can be removed to the proper federal court if it could have been brought there originally. 28 U.S.C. § 1441. Federal district courts have original diversity jurisdiction when the amount in controversy "exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different states." 28 U.S.C. § 1332(a). In addition, with respect to bankruptcy cases and as relevant to this case, district courts have "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(a)-(b). Moreover, "a defendant desiring to remove a case has the burden of proving the diversity jurisdiction requirements." *Gafford v. Gen. Electric Co.*, 997 F.2d 150, 155 (6th Cir. 1993).

In its Notice of Removal, Defendant asserts that this Court can properly exercise diversity jurisdiction over the parties' dispute. As an alternative basis for removal, Defendant contends that this case is related to Plaintiff's bankruptcy case, and thus, subject matter jurisdiction exists on that basis. Plaintiff's Motion to Remand challenges both asserted bases for jurisdiction.

### B. Diversity Jurisdiction and The Forum Doctrine

Defendant's principal basis for removal is diversity jurisdiction. For purposes of diversity jurisdiction, a corporation is a citizen of "any State by which it has been incorporated and of the State where it has its principal place of business . . . ." 28 U.S.C. § 1332(c)(1). Unlike a corporation, "the citizenship of [a limited liability company] for purposes of the diversity jurisdiction is the citizenship of its members." *Cosgrove v.*

*Bartolotta*, 150 F.3d 729, 731 (7th Cir. 1998)). Furthermore, one of the fundamental requirements of diversity jurisdiction is that there be complete diversity between or among the parties, meaning "that no party share citizenship with any opposing party." *Caudill v. N. Am. Media Corp.*, 200 F.3d 914, 916 (6th Cir. 2000); *accord Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 267 (1806).

In the case at bar, the parties do not dispute that the amount in controversy exceeds the sum or value of $75,000. Instead, Plaintiff contends that the parties are not diverse. Plaintiff is a limited liability company whose sole member is Delphi Corporation.[2] Pursuant to 28 U.S.C. § 1332(c)(1), Delphi Corporation is a citizen of Delaware, its state of incorporation, and Michigan, its principal place of business.[3] Thus, Plaintiff is also a citizen of Delaware and Michigan for diversity purposes. *Cosgrove*, 150 F.3d at 731; *see also Homfeld II, LLC*, 53 Fed. App. 731, 732, 2002 WL 31780184, at *1, 2002 U.S. App. LEXIS 24625, at *4 (6th Cir. Dec. 3, 2002). Defendant is a citizen of Delaware, its state of incorporation, and New Hampshire, its principal place of business. (Compl. ¶ 3.) Seemingly, because Plaintiff and Defendant are both citizens of Delaware there is no diversity of citizenship and thus no diversity jurisdiction. Nonetheless, Defendant claims that Plaintiff's state of incorporation, Delaware, should be disregarded for purposes of

---

[2]Plaintiff's Complaint erroneously states that "Delphi is a Delaware corporation with its principal executive offices in Troy, Michigan." (Compl. ¶ 2.) In their briefs, the parties acknowledge that Delphi is actually a limited liability composed of one member Delphi Corporation. (Dft.'s Memo. In Opp. at 3; Pl.'s Rep. Br. at 1 n.1.)

[3]Defendant acknowledges that Delphi Corporation's principal place of business is in Troy, Michigan. (Dft.'s Memo. In Opp. at 3.) In its reply brief, Plaintiff states that "Delphi's sole member is Delphi Corporation, which is incorporated in Delaware." (Pl.'s Reply at 1 n.1.)

diversity jurisdiction based on the forum doctrine.

According to Defendant, "the forum doctrine provides that, when a multi-state corporation sues or is sued in one of its states of citizenship, it is considered a citizen of only that state for diversity jurisdiction purposes."[4] (Dft.'s Resp. Br. at 4.) Thus, Defendant contends that because Plaintiff sued in Michigan, its principal place of business, it is considered a citizen of only Michigan for diversity jurisdiction purposes. Plaintiff contends that the forum doctrine was effectively abolished in 1958 when Congress amended the diversity statute to what is now 28 U.S.C. § 1332(c)(1), and even if the forum doctrine is still viable, Plaintiff argues that it does not apply in this case.

In this Court's view, the forum doctrine was effectively abolished when Congress enacted the current diversity statute in 1958. There is no recent case law on the forum doctrine in the Sixth Circuit or elsewhere.[5] Nonetheless, the majority of federal district courts addressing the issue have held that the forum doctrine was effectively abolished by the 1958 amendment to the diversity statute. As stated by the District Court in Utah:

> It appears . . . that the weight of authority goes in the other direction, supporting the position that the 1958 amendment effectively abolished the forum doctrine. Both the Third and the Fifth Circuits have adopted this position, while no circuits have upheld the forum doctrine since section 1332(c) was

---

[4]A treatise on federal practice and procedure describes the forum doctrine in a different manner. *See* 13B WRIGHT, MILLER & COOPER, FEDERAL PRACTICE AND PROCEDURE § 3626, at p. 644 (2d ed. 1984)(stating that "if suit was brought by or against a corporation in one of its states of incorporation, for diversity purposes the company would be treated as if it were only a citizen of the forum state"). This suit was not brought in either party's state of incorporation.

[5]Defendant argues that the lack of case law on this issue is "due to the unavailability of appellate review for removal and remand decisions . . . ." (Dft.'s Sur-Rep. at 2.) Defendant is probably correct. *See* 28 U.S.C. § 1447(d).

amended.  Significantly, the New York District Court that took the lead in upholding the forum doctrine after the 1958 amendment in *Hudak* has since renounced that position in *Oslick v. The Port Authority of New York and New Jersey*, 83 F.R.D. 494 (S.D.N.Y. 1979).  Other district court cases that follow this more prevalent view include *French v. Clinchfield Coal Company*, 407 F. Supp. 13 (D.C. Del. 1976), *Evans-Hailey Company v. Crane Company*, 207 F. Supp. 193 (D.C. Tenn. 1962), *Nayer v. Sears, Roebuck & Company*, 200 F. Supp. 319 (D.C.N.H. 1961), *Stroup v. Pittsburgh & Lake Erie Railroad Company*, 186 F. Supp. 154 (D.C. Ohio 1960), *Diesing v. Vaughn Wood Products, Inc.*, 175 F. Supp. 460 (D.C.W.D. Va. 1959), *Harker v. Kopp, et al.*, 172 F. Supp. 180 (N.D. Ill. 1959).

*V-1 Oil Co. v. CCAT, Inc.*, 658 F. Supp. 886, 888 (D. Utah 1987).[6]  The court in *V-1 Oil Co.* also pointed out that the "[t]wo leading treatises on federal practice and procedure firmly adopt the view that the 1958 amendment repudiates the forum doctrine."  *Id.* at 889 (citing 1 MOORE'S FEDERAL PRACTICE para. 0.78[2], p. 723.58 (1986) and 13B WRIGHT, MILLER & COOPER, FEDERAL PRACTICE AND PROCEDURE § 3626, pp. 655-58 (2d ed. 1984)).  This Court agrees with the majority of federal district courts and concludes that the forum doctrine was effectively abolished when Congress amended the diversity statute in 1958.[7]

---

[6]*See also Smith v. Arundel Coop., Inc.*, 660 F. Supp. 912, 913 (D.C.D.C. 1987)(holding that the forum doctrine was effectively abolished by the 1958 amendment to 28 U.S.C. § 1332).

[7]Even if the forum doctrine was not effectively abolished by the 1958 amendment of 28 U.S.C. § 1332(c)(1), it is questionable whether it would apply to Plaintiff, an LLC composed solely of a corporation incorporated in one state.  *See Fritz v. Am. Home Shield Corp.*, 751 F.2d 1152, 1154 (11th Cir. 1985)(holding that the forum doctrine does not apply where a corporation is incorporated in one state); *see also Nayer v. Sears, Roebuck & Co.*, 200 F. Supp. 319, 320 (D.C.N.H. 1961)(holding that the forum doctrine applies to "multi-state incorporated" defendants not multi-state citizenship" defendants).  Moreover, the cases relied on by Defendant which applied the forum doctrine did so when a party was a railroad incorporated in more than one state.  *Patch v. Wabash R.R. Co.*, 207 U.S. 277, 28 S. Ct. 80 (1907); *Jacobson v. N.Y. N.H.*

Defendant provides a number of different explanations as to why it believes the forum doctrine survived the 1958 amendment of 28 U.S.C. § 1332. First, Defendant argues that "[a] predecessor proposal to the bill that ultimately resulted in section 28 U.S.C. § 1332(c)(1) would have made a corporation 'a citizen *both* of the States of its creation and the State in which it has its principal place of business.'" (Dft.'s Memo. In Opp. at 6 (citing S. Rep. No. 85-1830 (1958), *as reprinted in* 1958 U.S.C.C.A.N. 3099, 3100)(emphasis added by Defendant).) According to Defendant, "Congress's adoption of 'any' instead of 'both' allowed courts to continue to deem multi-state corporations citizens of only the forum state in cases in which the corporation sued or was sued in one of its states of citizenship, since the forum state would be one of 'any' of the states permitted for the purposes of diversity jurisdiction." (*Id.* (citing *Hudak*, 238 F. Supp. at 792).) Whatever Congress's intent was in substituting "any" for "both," it seems to matter little based on the use of the conjunctive in 28 U.S.C. § 1332(c)(1), which leads this Court to believe that when a corporation is incorporated in a State that is different from its principal place of business, regardless of the particular circumstances involved, a corporation is a citizen of two states for the purposes of diversity jurisdiction.

Second, Defendant argues that a 1990 report by a Federal Courts Study Committee ("Committee") provides evidence that the forum doctrine survived the 1958 amendment. The Committee, which was charged with recommending to Congress ways to limit

---

*& H. Ry. Co.*, 347 U.S. 909, 74 S. Ct. 474 (1954); *Lake Shore & M.S. R.Y. Co. v. Eder*, 174 F. 944 (6th Cir. 1909); *Majewski v. N.Y. Cent. R.R. Co.*, 227 F. Supp. 950, 951 (W.D. Mich. 1964). Thus, it is questionable whether the forum doctrine would even apply in this case.

7

federal jurisdiction, recommended "that Congress simply reject the forum doctrine." Federal Courts Study Committee, Working Papers and Subcommitte Reports, Volume I, at p. 467 (July 1, 1990). Defendant contends that because Congress never heeded the Committee's recommendation, the forum doctrine is still alive and well. Defendant's reliance on Congress' inaction is unpersuasive. It is also equally as plausible that Congress' inaction can be attributed to the fact that it did not believe that an express rejection of the forum doctrine was necessary after the 1958 amendment (either because the cases where it allegedly applies are rare or the language of the 1958 amendment speaks for itself). *See Guaranty Corp. v. LTV Corp.*, 496 U.S. 633, 650, 110 S. Ct. 2668, 2678 (1990)("Congressional inaction lacks persuasive significance because several equally tenable inferences may be drawn from such inaction, including the inference that the existing legislation already incorporated the offered change.")(internal quotations marks omitted).

Because the Court has concluded that the forum doctrine was effectively abolished by the 1958 amendment to the diversity statute, there is no complete diversity between the parties. Therefore, this Court does not have diversity jurisdiction.

**B.     Jurisdiction Based on Bankruptcy and Abstention**

In the alternative, Defendant argues that removal is appropriate pursuant to 28 U.S.C. § 1452, which allows removal where a "district court has jurisdiction . . . under section 1334 of this title." As stated above, section 1334 confers "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). In its Notice of Removal, Defendant states

that "federal jurisdiction is proper because the instant case is related to Delphi's bankruptcy case." (Dft.'s Memo. In Opp. at 4.) Plaintiff does not dispute this allegation. Instead, Plaintiff argues that mandatory abstention applies to this case pursuant to 28 U.S.C. § 1334(c)(2).[8] Alternatively, Plaintiff contends that permissive abstention applies pursuant to 28 U.S.C. § 1334(c)(1).

With respect to mandatory abstention, 28 U.S.C. § 1334(c)(2) provides:

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

As summarized by the Sixth Circuit:

> [F]or mandatory abstention to apply to a particular proceeding, there must be a timely motion by a party to that proceeding, and the proceeding must: (1) be based on a state law claim or cause of action; (2) lack a federal jurisdictional basis absent bankruptcy; (3) be commenced in a state forum of appropriate jurisdiction; (4) be capable of timely adjudication; and (5) be a non-core proceeding.

*Lindsey v. O'Brien, Tanski, Tanzer & Young Health Care Providers (In re Dow Corning Corp.)*, 113 F.3d 565, 570 (6th Cir. 1997).

In this Court's opinion, there is no real dispute that factors (1) through (3) are

---

[8]"The abstention provisions of 28 U.S.C. § 1334(c)(2) apply even though a case has been removed pursuant to 28 U.S.C. § 1452." *Robinson v. Mich. Consol. Gas Co.*, 918 F.2d 579, 584 n.3 (6th Cir. 1990).

9

satisfied in this case. Plaintiff's Complaint asserts six separate counts, all based on state law. As this Court has already determined, there is no complete diversity; thus, there is no federal jurisdictional basis absent bankruptcy. Moreover, this case was commenced in the Oakland County Circuit Court, a state forum of appropriate jurisdiction.

Defendant, relying on *In re Delorean Motor Co.*, 49 B.R. 900 (Bankr. E.D. Mich. 1985), contends that Plaintiff has failed to satisfy its burden in establishing that this matter is capable of timely adjudication in the Oakland County Circuit Court.[9] The bankruptcy court in *Delorean* held that "[t]imely adjudication . . . requires an examination by the Court of the state court's calendar, the status of the bankruptcy proceeding, the complexity of the issues, and whether the state court proceeding would prolong the administration, or liquidation of the estate." *Id.* at 911. Even if *Delorean* were binding precedent in the Sixth Circuit, this Court believes that Plaintiff has satisfied its burden in establishing that this matter can be timely adjudicated in the Oakland County Circuit Court. In its reply brief, Plaintiff proffers an Administrative Order issued by Oakland County Judges pledging to resolve 75% of civil matters within 1 year, 95% of civil matters within 18 months, and 100% of civil matters within 2 years. (Pl.'s Rep. Br. Ex. B.) Furthermore, based on the Oakland County Circuit Court's 2006 Annual Report, also proffered by Plaintiff, dispositions of civil cases have exceeded new civil filings. (*Id.* Ex.

---

[9]Moreover, this Court is not persuaded by Defendant's argument that because it has filed a "comprehensive motion to dismiss and/or summary judgment," (Dft.'s Resp. Br. at 14 n.10), this case could be resolved more quickly in this Court. Defendant's argument, based primarily on its own self-serving actions, misses the point. The inquiry is whether the *Oakland County Circuit Court* can timely adjudicate the case. Besides, this Court does not believe that it should reward Defendant, particularly where, as here, Defendant's decision to remove resulted in further delays.

C.) Consequently, this Court believes that this matter can be timely adjudicated in the Oakland County Circuit Court.

Finally, Defendant contends that this case is a core proceeding. As stated by the Sixth Circuit, "[i]f the proceeding does not invoke a substantive right created by federal bankruptcy law and is one that could exist outside of the bankruptcy, then it is not a core proceeding." *Michigan Employment Sec. Comm'n v. Wolverine Radio Co., Inc. (In re Wolverine Radio Co.)*, 930 F.2d 1132, 1144 (6th Cir. 1991). In arguing that this is a core bankruptcy proceeding, Defendant does not point to any substantive right created by federal bankruptcy law; nor does Defendant contend that this case could not exist outside of the bankruptcy. Rather, Defendant relies on a bankruptcy case from outside the Sixth Circuit, *In re Franklin Computer Corp.*, 50 B.R. 620 (Bankr. E.D. Pa. 1985), for the proposition that "this case is essentially a collection action to recover one or more alleged accounts receivable totaling $5.2 million." (Dft.'s Resp. Br. at 11.) Furthermore, based on its characterization of Plaintiff's case as an action to recover accounts receivable, Defendant argues that this is a core proceeding as provided by 28 U.S.C. §§ 157(b)(2)(A), 157(b)(2)(E), and 157(b)(2)(O).[10]

---

[10]According to 28 U.S.C. § 157(b)(2):

> Core proceedings include, but are not limited to–
> (A) matters concerning the administration of the estate;
> . . .
> (E) orders to turn over property of the estate;
> . . .
> (O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims . . . .

This Court does not believe that this is a core proceeding. Defendant does not cite a case holding that a state law breach of contract action, with alternative state law claims, is a core proceeding. Furthermore, this Court does not believe that the case at bar involves "matters concerning the administration of the estate," "orders to turn over property of the estate," or "other proceedings affecting the liquidation of assets of the estate . . . ." 28 U.S.C. §§ 157(b)(2)(A), 157(b)(2)(E) and 157(b)(2)(O).[11] Moreover, even if Plaintiff's Complaint could be characterized as one seeking collection of accounts receivable, "[t]here is an abundance of reported decisions with no clear consensus on that issue, the varying results typically being dependent on the particular facts of each case." *BN1 Telecomms., Inc. v. Lomaz (In re BN1 Telecomms., Inc.)*, 246 B.R. 845, 849 (B.A.P. 6th Cir. 2000)(collecting cases). In this case, Defendant does not rely on the particular *facts* to argue that this case fits in one of the categories of core proceedings it claims apply to Plaintiff's Complaint. Consequently, this Court is not persuaded by Defendant's contention that this is a core proceeding. Because all of the factors for mandatory abstention are satisfied, remand to the Oakland County Circuit Court is proper pursuant to 28 U.S.C. § 1334(c)(2).

Assuming *arguendo* that mandatory abstention is not proper, this Court believes that

---

[11]As further evidence that this lawsuit will not effect the administration of its estate, Plaintiff proffers its Chapter 11 Plan Framework, in which Plaintiff agreed to pay unsecured creditors in full with interest and pay dividends to its equity holders. (*See* Pl.'s Rep. Br. Ex. A.) Consequently, because Plaintiff has agreed to pay its creditors in full, any damages that may flow from the successful prosecution of this lawsuit will not substantially affect Plaintiff's ability to pay its creditors.

12

permissive abstention is appropriate. *See* 28 U.S.C. § 1334(c)(1) (providing for permissive abstention). Courts consider the following factors in determining whether permissive abstention is appropriate:

> (1) the effect or lack thereof on the efficient administration of the estate if a court recommends abstention; (2) the extent to which state law issues predominate over bankruptcy issues: (3) the difficulty or unsettled nature of the applicable law; (4) the presence of a related proceeding commenced in state court or other nonbankruptcy court; (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334; (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (7) the substance rather than the form of an asserted core proceeding; (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court; (9) the burden of the bankruptcy court's docket; (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties; (11) the existence of a right to a jury trial; and (12) the presence in the proceeding of non-debtor parties.

*Beneficial Nat'l Bank USA v. Best Reception Sys., Inc.*, 220 B.R. 932, 953 (Bankr. E.D. Tenn. 1998)(citations omitted).

In considering the above-mentioned factors, this Court believes that a discretionary remand of this case is appropriate. The state law claims asserted in Plaintiff's Complaint predominate over any bankruptcy issue that may arise due to Plaintiff's chapter 11 proceeding. While the state law claims do not appear to be based on any unsettled issues of state law, this Court is convinced that Plaintiff's state law claims are only indirectly related to its bankruptcy case. Moreover, as the Court held above, there is no other independent basis for jurisdiction other than 28 U.S.C. § 1334. Finally, the parties' right to a jury trial will be preserved on remand, and the fact that Defendant is a non-debtor

party also weighs in favor of discretionary remand. Therefore, in the alternative, discretionary remand is appropriate in this case pursuant to 28 U.S.C. § 1334(c)(1).

Accordingly,

**IT IS ORDERED** that Plaintiff's Motion to Remand is **GRANTED** and that this case is **REMANDED** to the Oakland County Circuit Court.

s/PATRICK J. DUGGAN
UNITED STATES DISTRICT JUDGE

Copies to:
Benjamin K. Steffans, Esq.
Daniel J. Dulworth, Esq.
James E. Wynne, Esq.
Andrew S. Doctoroff, Esq.